UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | Criminal No. 15-CR-319 |
| v. § | |
| § | UNDER SEAL |
| GODWIN ORIAKHI, § | |
| CHARLES ESECHIE, and § | |
| IDIA ORIAKHI, § | |
| § | |
| Defendants. § | |

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Second Superseding Indictment, unless otherwise specified:

The Medicare Program

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a HHA based on claims submitted to

the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid for home health services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and,

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a POC for furnishing services was established and periodically reviewed; and,

        iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

6. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7. These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

The Medicaid Program

8. Medicaid was implemented in 1967 under the provisions of Title 19 of the Social Security Act of 1965. The State of Texas and the federal government shared the cost of funding the Texas Medicaid Program. The Medicaid program helped pay for reasonable and necessary medical procedures and services provided to individuals who were deemed eligible under state low-income programs. Medicaid was "a health care benefit program" as defined by Title 18, United States Code, Section 24(b).

9. The State of Texas contracted with Texas Medicaid and Healthcare Partnership ("TMHP") to process claims submitted by physicians and other health care providers for individuals who received benefits paid for by Medicaid.

10. In order to receive reimbursement from Medicaid, a provider was required to submit an application and become an approved Medicaid provider. If the provider met certain minimum qualifications, Medicaid approved the application and the provider was issued a unique identification number also known as a "provider number." The provider was then allowed to submit bills for services known as "claims" to Medicaid for reimbursement for the cost of providing medically necessary services to Medicaid beneficiaries.

11. Upon assignment of a Medicaid provider number, a current Texas Medicaid Provider Procedures manual was distributed to the provider. Updates to the procedure manual were included in the Texas Medicaid Bulletins which were distributed to the provider by TMHP and available online. The procedure manual, bulletins and updates detailed the rules and regulations pertaining to services covered by Medicaid and how to appropriately bill for providing services to recipients.

12. Medicaid permitted approved providers to submit Medicaid claims on paper or electronically. Medicaid required that submitted claims contain the following details: the Medicaid beneficiary's name and Medicaid identification number; the service that the provider provided; the amount of time billed in 15 minute units; the date of service; and the charge for the service provided. Medicaid required providers to provide the services to the beneficiary prior to submitting a claim for payment to Medicaid.

Personal Assistance Services

13. Personal Assistance Services ("PAS") were a Medicaid benefit that provided beneficiaries with services that aided in living independently. PAS included among other things, bathing, housekeeping, meal preparation, and grocery shopping.

14. To provide PAS, an agency was required to be licensed as a home and community support services agency by the Texas Department of Aging and Disability Services ("DADS"). DADS required agencies to submit an application, develop policies and procedures, and undergo monitoring audits every other year. Once licensed, DADS provided all agencies with a handbook which detailed the rules and regulations pertaining to PAS.

15. DADS had certain rules for hiring unlicensed PAS providers. Agencies were required to screen all unlicensed applicants for prohibitive criminal convictions and employment

eligibility through DADS before allowing employees to have face-to-face contact with beneficiaries. Agencies were also required to supervise, train, and assess competence of all unlicensed persons. Annual employee evaluations of unlicensed PAS providers were mandatory.

16. PAS were required to be provided according to an individualized service plan which included the types of services to be provided, the location where services would be provided, the frequency and duration of services, and a plan for supervision of the services. DADS required agencies to conduct face-to-face visits with all beneficiaries and their PAS provider every six months.

17. DADS required providers to keep timesheets and other client records which accurately and completely documented all services and which were readily accessible. Agencies were required to ensure that entries regarding the delivery of services were not altered without evidence and explanation for each alteration.

The Defendants and Their Co-Conspirators

18. Defendant **GODWIN ORIAKHI** was a resident of Harris County, Texas. Defendant **GODWIN ORIAKHI** owned, operated, and controlled approximately five companies that were located in Houston, Texas. These companies included, but were not limited to, the following:

   a. Baptist Home Care Providers, Inc. ("Baptist"), was a Texas corporation that submitted claims to Medicare and Medicaid for home healthcare services and PAS;

   b. Community Wide Home Health, Inc. ("Community Wide"), was a Texas corporation that submitted claims to Medicaid for PAS;

   c. Four Seasons Home Healthcare, Inc. ("Four Seasons"), was a Texas corporation that submitted claims to Medicaid for PAS;

5

d. Aabraham Blessings, LLC ("Aabraham Blessings"), was a Texas corporation that submitted claims to Medicaid; and

e. Kis Med Concepts, Inc. ("Kis Med"), was a Texas Corporation that submitted claims to Medicaid for PAS.

19. Defendant **CHARLES ESECHIE**, a resident of Harris County, Texas, was a registered nurse who worked for Baptist and a Houston-area hospital.

20. Defendant **IDIA ORIAKHI**, a resident of Fort Bend County, Texas, worked for, administered, operated, and managed Baptist, Community Wide, Four Seasons, Aabraham Blessings, and Kis Med (collectively the "Oriakhi Companies") with defendant **GODWIN ORIAKHI** and others.

21. Jermaine Doleman was a patient recruiter and PAS provider for the Oriakhi Companies.

22. Employee 1 worked for the Oriakhi Companies and, at times, acted as a patient recruiter and PAS provider for them.

## COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

23. Paragraphs 1 through 22 are re-alleged and incorporated by reference as if fully set forth herein.

24. From in or around 2009 through in or around 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**GODWIN ORIAKHI,**
**CHARLES ESECHIE, and**
**IDIA ORIAKHI**

did knowingly and willfully combine, conspire, confederate and agree with Jermaine Doleman, Employee 1, and others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for healthcare benefits, items and services.

### Purpose of the Conspiracy

25. It was a purpose of the conspiracy for defendants **GODWIN ORIAKHI**, **CHARLES ESECHIE**, **IDIA ORIAKHI**, Jermaine Doleman, Employee 1, and their co-conspirators to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of defendants **GODWIN ORIAKHI**, **CHARLES ESECHIE**, **IDIA ORIAKHI** and their co-conspirators.

### Manner and Means of the Conspiracy

The manner and means by which defendants **GODWIN ORIAKHI**, **CHARLES ESECHIE**, **IDIA ORIAKHI**, Jermaine Doleman, Employee 1, and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

26. Defendant **GODWIN ORIAKHI** and his co-conspirators obtained and maintained a Medicare provider number for Baptist, which defendant **GODWIN ORIAKHI** and his co-conspirators used to submit claims to Medicare for home healthcare services that Baptist did not

provide to its beneficiaries and for which its beneficiaries did not have a legitimate medical need and were not qualified to receive.

27. Defendants **GODWIN** and **IDIA ORIAKHI** and their co-conspirators paid Jermaine Doleman, Employee 1, and others illegal kickbacks to refer Medicare beneficiaries to Baptist for home healthcare services that Baptist did not provide to its beneficiaries and for which its beneficiaries did not have a legitimate medical need and were not qualified to receive.

28. Defendants **GODWIN** and **IDIA ORIAKHI** and their co-conspirators used Jermaine Doleman, Employee 1, and others to pay illegal kickbacks to physicians who certified Baptist's beneficiaries for home healthcare services that Baptist did not provide to its beneficiaries and for which its beneficiaries did not have a legitimate medical need and were not qualified to receive.

29. Defendant **CHARLES ESECHIE** falsified medical records to make it appear that the beneficiaries qualified for and received home healthcare services that Baptist did not provide to its beneficiaries and for which its beneficiaries did not have a legitimate medical need and were not qualified to receive. In some cases, defendants **GODWIN** and **IDIA ORIAKHI** and their co-conspirators helped defendant **CHARLES ESECHIE** falsify these medical records.

30. Defendants **GODWIN** and **IDIA ORIAKHI**, Employee 1, and others destroyed or altered the Oriakhi Companies' documents to conceal evidence that implicated them, their co-conspirators, and the Oriakhi Companies in illegal activity and to make the documents appear legitimate and compliant with Medicare and Medicaid laws, rules, and program instructions.

31. Defendants **GODWIN** and **IDIA ORIAKHI, CHARLES ESECHIE**, their co-conspirators, and others billed and received payment from Medicare for home healthcare services

that Baptist did not provide to its beneficiaries and for which its beneficiaries did not have a legitimate medical need and were not qualified to receive.

32. From in or around 2009 to in or around 2015, Baptist billed Medicare approximately $5,099,970 for home healthcare services that it purportedly provided to Medicare beneficiaries. Medicare paid Baptist approximately $4,792,199 on those claims.

33. After Medicare deposited payments into Baptist's bank account, defendant **GODWIN ORIAKHI** transferred proceeds of the fraud to himself, defendant **IDIA ORIAKHI**, defendant **CHARLES ESECHIE**, and their co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

34. Paragraphs 1 through 22 and 26 through 33 are re-alleged and incorporated by reference as if fully set forth herein.

35. From in or around 2009 through in or around 2016, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

### GODWIN ORIAKHI and
### IDIA ORIAKHI

did knowingly and willfully combine, conspire, confederate and agree with Jermaine Doleman, Employee 1, and others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations and

promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of and payment for healthcare benefits, items and services.

### Purpose of the Conspiracy

36. It was a purpose of the conspiracy for defendants **GODWIN** and **IDIA ORIAKHI**, Jermaine Doleman, Employee 1, and their co-conspirators to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicaid, (b) concealing the submission of false and fraudulent claims to Medicaid and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of defendants **GODWIN ORIAKHI, CHARLES ESECHIE, IDIA ORIAKHI** and their co-conspirators.

### Manner and Means of the Conspiracy

The manner and means by which defendants **GODWIN** and **IDIA ORIAKHI**, Jermaine Doleman, Employee 1, and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

37. Defendant **GODWIN ORIAKHI** and his co-conspirators obtained and maintained Medicaid provider numbers for the Oriakhi Companies, which he and his co-conspirators used to submit claims to Medicaid for PAS that the Oriakhi Companies did not provide to their beneficiaries and for which their beneficiaries did not have a legitimate medical need and were not qualified to receive.

38. Defendants **GODWIN** and **IDIA ORIAKHI** and their co-conspirators paid Jermaine Doleman, Employee 1, and others illegal kickbacks to refer Medicaid beneficiaries to the Oriakhi Companies for PAS that the Oriakhi Companies did not provide to their beneficiaries and

for which their beneficiaries did not have a legitimate medical need and were not qualified to receive.

39. Defendant **GODWIN ORIAKHI** instructed his co-conspirators and others to coach the Oriakhi Companies' beneficiaries on how to make it appear as if they qualified for PAS for which the beneficiaries did not have a legitimate medical need and were not qualified to receive. In addition, beneficiaries who may have had a legitimate medical need and qualified for a minimum amount of PAS were coached to exaggerate their medical conditions in order to make it appear as if they qualified for more PAS than they actually needed. To ensure that DADS qualified the Oriakhi Companies' beneficiaries for PAS, Jermaine Doleman and other people affiliated with the Oriakhi Companies attended meetings that DADS held with the beneficiaries to evaluate them for PAS.

40. Defendant **GODWIN ORIAKHI**, Jermaine Doleman, Employee 1, and others rarely, if ever, visited the beneficiaries at their homes and provided them with PAS that defendants **GODWIN** and **IDIA ORIAKHI** and their co-conspirators billed to Medicaid. In exchange for a portion of the money that the Oriakhi Companies received from Medicaid for PAS, the beneficiaries did not alert DADS that the Oriakhi Companies did not provide them with PAS, and helped Jermaine Doleman, Employee 1, and others falsify the timesheets and other client records that DADS required the Oriakhi Companies to maintain to support the PAS claims that they submitted to Medicaid. Defendants **GODWIN** and **IDIA ORIAKHI**, Jermaine Doleman, Employee 1, and others paid the beneficiaries to participate in this scheme and knew that the timesheets and client records that supported the PAS claims that defendants **GODWIN and IDIA ORIAKHI** and their co-conspirators submitted to Medicaid were false. In some cases, defendant

**GODWIN ORIAKHI** instructed Employee 1 to submit PAS claims to Medicaid without the supporting timesheets and the other client records required by DADS.

41. Defendants **GODWIN** and **IDIA ORIAKHI**, their co-conspirators, and others billed and received payment from Medicaid for PAS that the Oriakhi Companies did not provide to their beneficiaries and for which their beneficiaries did not have a legitimate medical need and were not qualified to receive. In fact, from in or around 2009 through in or around 2016, defendants **GODWIN** and **IDIA ORIAKHI**, their co-conspirators, and others submitted or caused the submission of approximately $11,790,525 in fraudulent claims to Medicaid, and received approximately $11,174,804 in reimbursement payments from Medicaid on those claims.

All in violation of Title 18, United States Code, Section 1349.

**Counts 3-5**
**Healthcare Fraud**
**(Violation of 18 U.S.C. §§ 2 and 1347)**

42. Paragraphs 1 through 22, 26 through 33, and 37 through 41 are re-alleged and incorporated by reference as if fully set forth herein.

43. On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**GODWIN ORIAKHI** and
**CHARLES ESECHIE**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud healthcare benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain by means of materially false and

fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare and Medicaid, as set forth below:

| Count | Beneficiary | Approximate Start of Care Date | Approximate Payment Date | Approximate Medicare Payment | Defendants | Benefit Program |
|---|---|---|---|---|---|---|
| 3 | K.B. | 07/03/2014 | 10/10/2014 | $1,859 | GODWIN ORIAKHI and CHARLES ESECHIE | Medicare |
| Count | Beneficiary | Approximate Start of Care Date | Approximate Payment Date | Approximate Medicare Payment | Defendants | Benefit Program |
| 4 | C.C. | 08/14/2013 | 11/18/2013 | $1,734 | GODWIN ORIAKHI and CHARLES ESECHIE | Medicare |
| 5 | C.C. | 03/16/2014 | 04/04/2014 | $473 | GODWIN ORIAKHI | Medicaid |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 6
**Conspiracy to Pay and Receive Healthcare Kickbacks**
**(Violation of 18 U.S.C. § 371)**

44.  Paragraphs 1 through 22, 26 through 33, 37 through 41, and 43 of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

45.  From in or around 2009 through in or around 2016, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**GODWIN ORIAKHI and**
**IDIA ORIAKHI**

13

did knowingly and willfully combine, conspire, confederate and agree with Jermaine Doleman, Employee 1, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

    a.    to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare and Medicaid; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare and Medicaid; and

    b.    to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare or Medicaid; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare and Medicaid.

### Purpose of the Conspiracy

46.    It was a purpose of the conspiracy for defendants **GODWIN** and **IDIA ORIAKHI**, Jermaine Doleman, Employee 1, and their co-conspirators to unlawfully enrich themselves by

paying and receiving kickbacks and bribes in exchange for the referral of Medicare or Medicaid beneficiaries for whom the Oriakhi Companies submitted claims to Medicare and Medicaid.

### Manner and Means of the Conspiracy

47. Paragraphs 26 through 33, 37 through 41 and 43 re-alleged and incorporated by reference as though fully set forth herein.

### Overt Acts

48. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a. On or about June 23, 2014, defendant **GODWIN ORIAKHI** paid Jermaine Doleman approximately $2,800 for referring Medicare or Medicaid beneficiaries to the Oriakhi Companies for home healthcare services or PAS.

b. On or about July 7, 2014, defendant **IDIA ORIAKHI** paid Jermaine Doleman approximately $2,700 for referring Medicare or Medicaid beneficiaries to the Oriakhi Companies for home healthcare services or PAS.

c. On or about July 16, 2014, defendant **IDIA ORIAKHI** paid Jermaine Doleman approximately $1,400 for referring Medicare or Medicaid beneficiaries to the Oriakhi Companies for home healthcare services or PAS.

d. On or about July 30, 2014, defendant **GODWIN ORIAKHI** paid Jermaine Doleman approximately $3,000 for referring Medicare or Medicaid beneficiaries to the Oriakhi Companies for home healthcare services or PAS.

e.  On or about August 5, 2014, defendant **IDIA ORIAKHI** paid Jermaine Doleman approximately $2,950 for referring Medicare or Medicaid beneficiaries to the Oriakhi Companies for home healthcare services or PAS.

f.  On or about August 9, 2014, defendant **GODWIN ORIAKHI** paid Jermaine Doleman approximately $1,200 for referring Medicare or Medicaid beneficiaries to the Oriakhi Companies for home healthcare services or PAS.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 7-12
### Payment and Receipt of Healthcare Kickbacks
### (Violation of 18 U.S.C. § 2 and 42 U.S.C. §§ 1320a-7b(b)(1) and (b)(2))

49.  Paragraphs 1 through 22, 26 through 33, 37 through 41, 43, and 48 this Second Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

50.  On or about the dates enumerated below, in the Southern District of Texas, and elsewhere, defendants

**GODWIN ORIKAHI** and
**IDIA ORIAKHI**

as set forth below, aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully offer, pay, solicit, and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare and Medicaid; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program, that is, Medicare and Medicaid, as set forth below:

16

| Count | Defendant | Recipient | On or About Date | Approximate Amount of Kickback |
|---|---|---|---|---|
| 7 | **GODWIN ORIAKHI** | Jermaine Doleman | June 23, 2014 | $2,800 |
| 8 | **GODWIN ORIAKHI** | Jermaine Doleman | July 30, 2014 | $3,000 |
| 9 | **GODWIN ORIAKHI** | Jermaine Doleman | August 9, 2014 | $1,200 |
| 10 | **IDIA ORIAKHI** | Jermaine Doleman | July 7, 2014 | $2,700 |
| 11 | **IDIA ORIAKHI** | Jermaine Doleman | July 16, 2014 | $1,400 |
| 12 | **IDIA ORIAKHI** | Jermaine Doleman | August 5, 2014 | $2,950 |

All in violation of Title 42, United States Code, Sections 1320a-7b(b)(1) and (b)(2) and Title 18, United States Code, Section 2.

## COUNT 13
**Conspiracy to Commit Laundering of Monetary Instruments**
**(18 U.S.C. § 1956(h))**

51.  Paragraphs 1 through 22, 26 through 33, 37 through 41, 43, 48, and 50 of this Second Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

52.  From in or about April 2010 to in or about August 2014, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendant

## GODWIN ORIAKHI

did willfully and knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury, including Jermaine Doleman, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

It is further alleged that the specified unlawful activity was to commit healthcare fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

## **CRIMINAL FORFEITURE**
## **(18 U.S.C. § 982(a)(7))**

53. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendants

**GODWIN ORIAKHI,**
**CHARLES ESECHIE, and**
**IDIA ORIAKHI**

that upon conviction of any Counts in this Second Superseding Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses—approximately $15,967,002—is subject to forfeiture.

54. Defendants **GODWIN ORIAKHI, CHARLES ESECHIE,** and **IDIA ORIAKHI** are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

55. Defendants **GODWIN ORIAKHI, CHARLES ESECHIE,** and **IDIA ORIAKHI** are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendants or their co-conspirators:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred, or sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File
FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

JONATHAN T. BAUM
WILLIAM S.W. CHANG
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE